**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

GARY RENELIQUE,

                               Plaintiff,

        v.                                              No. 04-CV-577
                                                               (GLS/DRH)

NYS DOCS; SHERRY LeCLAIR, Inmate Coordinator for
Bare Hill Correctional Facility; KINGSLY, #205 Nurse at
Washington Correctional Facility; GRIFFITH, Nurse
Administrator at Washington Correctional Facility; C.O.
CUSTODIO, Washington Correctional Facility; ALISHIA
HOBEKE, #259 Nurse at Washington Correctional Facility;
DR. STRACHTMAN, Washington Correctional Facility; C.O.
STARK, Washington Correctional Facility; SERGEANT
FLEMING, Washington Correctional Facility; C.O. J.W.
BOLTA, JR.,Washington Correctional Facility; I. RIVERA,
Superintendent at Washington Correctional Facility; D.
GARDNIR, #412 Nurse at Coxsackie Correctional Facility;
BYRON, #252 Nurse at Washington Correctional Facility; C.O.
PAVLIN, Coxsackie Correctional Facility; SERGEANT
VACCARRO, Coxsackie Correctional Facility; K. BUMP,
Lieutenant at Coxsackie Correctional Facility; C.O. GLIDDEN,
Coxsackie Correctional Facility; McDERMOTT, Lieutenant at
Coxsackie Correctional Facility; SERGEANT MEIGS, Coxsackie
Correctional Facility; RAY MEDINA, Deputy of Programs at
Coxsackie Correctional Facility; C.O. CHAKONAS, Coxsackie
Correctional Facility; C.O. KELLER, Coxsackie Correctional
Facility; C.O. MURDZA, Coxsackie Correctional Facility; C.O.
DIETZMAN, Coxsackie Correctional Facility; C.O. STALEY,
Coxsackie Correctional Facility; C.O. DANNA HOWELL,
Coxsackie Correctional Facility; C.O. MATRESE, Coxsackie
Correctional Facility; C.O. VOGT, Coxsackie Correctional
Facility; KOVASSNAY, Psychiatrist at Coxsackie Correctional
Facility; G. FILION, Superintendent at Coxsackie Correctional
Facility; JOAN SMITH, Deputy of Health at Coxsackie
Correctional Facility; BALDWIN, Nurse Administrator at Coxsackie
Correctional Facility; H.D. GRAHAM, Deputy for Security at
Coxsackie Correctional Facility; GUNDERMAN, Lieutenant at
Coxsackie Correctional Facility; and PAULETTE, Counselor at
Greene Correctional Facility,

                               Defendants.
_____

**APPEARANCES:**                                    **OF COUNSEL:**

GARY RENELIQUE
Plaintiff Pro Se
1885 7th Avenue
Apartment 6A
New York, New York 10026

HON. ANDREW M. CUOMO                    JANICE A. DEAN, ESQ.
Attorney General for the                       NANCY G. GROENWEGEN, ESQ.
   State of New York                          Assistant Attorneys General
Attorneys for Defendants
The Capitol
Albany, New York 12224

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Gary Renelique ("Renelique"), formerly an inmate in the custody of the

New York State Department of Correctional Services ("DOCS"), brings this action pursuant

to the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and 42 U.S.C. §

1983 alleging that defendants, thirty-five DOCS employees and DOCS itself, violated his

constitutional rights under the First, Eighth, and Fourteenth Amendments.  Compl. (Docket

No. 1).  Presently pending is defendants' motion[2] for summary judgment pursuant to Fed.

R. Civ. P. 56.  Docket No. 57.  Renelique has failed to respond to the motion.  For the

following reasons, it is recommended that defendants' motion be granted.

_____

[1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] The motion is made on behalf of all defendants except Flemming and Paulette.
See section V infra.

2

## I.  Failure to Respond

Renelique did not oppose defendants' motion.[3]  "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."  <u>Champion v. Artuz</u>, 76 F.3d 483, 486 (2d Cir. 1996).  Even in the absence of a response, defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law.  <u>Id.</u>; <u>see</u> <u>also</u> Fed. R. Civ. P. 56(c).  Because Renelique has not responded to raise any question of material fact, however, the facts as set forth in defendants' Rule 7.1 Statement of Facts (Docket No. 57) are accepted as true.  <u>Adirondack Cycle & Marine, Inc. v. American Honda Motor Co.</u>, No. Civ. 00-1619, 2002 WL 449757, at *1 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) (citing <u>Lopez v. Reynolds</u>, 998 F. Supp. 252, 256 (W.D.N.Y. 1997)).

## II.  Background

At all relevant times, Renelique was an inmate in the custody of DOCS.  <u>See</u> Dean Decl. (Docket No. 57), Ex. A.  From July 15, 2003 to August 19, 2003, Renelique was incarcerated at Washington Correctional Facility ("Washington").  <u>See</u> <u>id.</u>  On August 19, 2003, he was transferred to Coxsackie Correctional Facility ("Coxsackie") and continued to be incarcerated there until June 10, 2004.  <u>See</u> <u>id.</u>  Renelique contends that while he was housed at Washington and Coxsackie, defendants were deliberately indifferent to his serious medical needs because they, <u>inter</u> <u>alia</u>, failed to treat his mental health issues, refused to treat him on numerous occasions, and failed to order the proper diagnostic tests.

---

[3] Renelique was released from DOCS custody on or about October 5, 2005.  <u>See</u> Defs. Statement of Material Facts (Docket No. 57) at ¶ 4.

See Compl. at ¶¶ 2-3, 8, 14, 32-33, 35, 38, 49, 51, 62, 65.  Renelique also contends that

defendants retaliated against him for filing grievances, violated his due process rights

during various disciplinary hearings, and repeatedly harassed and threatened him.  See id.

at 3 ("Preliminary Statement of Facts").  Finally, Renelique contends that defendants

violated the ADA by failing to provide him with access to the mess hall, law library, and

infirmary.  See id. at ¶ 56.


### III. Standard

A motion for summary judgment may be granted if there is no genuine issue as to

any material fact if supported by affidavits or other suitable evidence and the moving party

is entitled to judgment as a matter of law. The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56©; Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the

case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the

non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine

issue for trial. The non-moving party must do more than merely show that there is some

doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact

could find in favor of the non-moving party for a court to grant a motion for summary

4

judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994);

Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  When, as here, a party seeks

summary judgment against a pro se litigant, a court must afford the non-movant special

solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).[4]

However, the mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.


## IV.  Discussion

Renelique asserts nine causes of action against all defendants alleging, inter alia,

that they discriminated against him based on his disability, failed to provide him with proper

medical care, retaliated against him for filing grievances, denied him witnesses during

disciplinary hearings, and constantly harassed him in violation of the ADA and the First,

Eighth, and Fourteenth Amendments.[5]  Defendants seek summary judgment on all claims.


### A.  ADA

### 1. Individual Capacity

Renelique seeks recovery against defendants under the ADA in both their individual

---

[4] Nevertheless, Renelique has substantial experience as a pro se litigant, having filed at least ten other federal actions since 1999.  See U.S. Party/Case Index (visited Feb. 23, 2007) <http://pacer.uspci.uscourts.gov/cgi-bin/dquery.pl>.

[5] Renelique also contends that defendants forced him to walk up stairs and denied him access to the bathroom.  See Compl. at ¶¶ 22, 49.  However, Renelique fails to allege any injury from these alleged events.  Thus, Renelique has failed to raise a material issue of fact as to these alleged constitutional violations.

and official capacities.[6]  Defendants correctly contend that individuals cannot be held liable

under the ADA.  See  Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98,

107 (2d Cir. 2001); Hucks v. Artuz, No. Civ. 99-10420 (RMB/RLE), 2001 WL 210238, at *6

(S.D.N.Y. Feb. 27, 2001).

    Therefore, it is recommended that defendants' motion be granted as to each moving

defendant in their individual capacities as to Renelique's ADA claim.


## 2. Official Capacities

    Defendants also contend that they are entitled to sovereign immunity and thus

cannot be sued in their official capacities.

    The Eleventh Amendment provides that "[t]he Judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by Citizens or Subjects of

any Foreign State."  U.S. Const. amend. XI.  "[D]espite the limited terms of the Eleventh

Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her]

own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing

Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in

the absence of the State's consent, a suit against the State or one of its agencies or

departments is proscribed by the Eleventh Amendment.  Halderman, 465 U.S. at 100.

    A suit brought against a person in his or her official capacity must be treated as a suit

_____

    [6] Although Renelique does not specify, it is assumed that he is suing the
defendants under Title II of the ADA since Title I relates to employment discrimination.
See Defs. Mem. of Law (Docket No. 57) at 12 n.8.

against the entity represented by that person, provided that the public entity received notice and an opportunity to respond. Brandon v. Holt, 469 U.S. 464, 471-72 (1985).  In an official capacity action, a government entity is liable only when the entity itself is the "moving force" behind the alleged deprivation. Kentucky v. Graham, 473 U.S. 159, 166 (1985).  In other words, "the entity's 'policy or custom' must have played a part in the violation of federal law" for liability to attach. Id. (citations omitted); Hafer v. Melo, 502 U.S. 21, 25 (1991).

In this circuit that a plaintiff cannot seek monetary damages against a state or an individual sued in his or her official capacity unless "the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." Garcia, 280 F.3d at 112.  Here, Renelique offers only conclusory statements to demonstrate that the defendants' alleged violation of the ADA was motivated by discriminatory animus or ill will.

Therefore, it is recommended that defendants' motion on this ground be granted.


### 3.  Merits

Title II of the ADA applies to state inmates. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998); Beckford v. Portuondo, 151 F. Supp. 2d 204, 220 (N.D.N.Y. 2001) (Kahn, J.).  To state a claim under the ADA, an inmate must demonstrate that "(1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) [the facility that] provides the service, program or activity is a public entity." Clarkson v. Coughlin, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995); 42 U.S.C. § 12132.  "The [ADA] defines disability as: '(A) a physical or mental impairment that

substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (3) being regarded as having such an impairment.'" Bragdon v. Abbott, 524 U.S. 624, 630 (1998) (quoting 42 U.S.C. § 12102(2)).

Renelique alleges that he is disabled because he cannot walk long distances or climb stairs and has difficulty sleeping.  See Compl. at ¶¶ 25, 54, 59.  Defendants contend that although Renelique may have difficulty walking or climbing stairs, these limitations are not substantial and therefore do not qualify as disabilities under the ADA.  Defs. Mem. of Law at 14.  It appears that Renelique's alleged difficulties with walking and climbing stairs fail to demonstrate that he is a "qualified individual with a disability."[7]  However, even assuming that Renelique's injuries qualify as disabilities under the ADA, he has failed to raise a question of fact as to whether defendants' actions were motivated in any way by his alleged disability.  Moreover, although Renelique alleges in his complaint that he was denied access to the mess hall, law library, and infirmary (see Compl. at ¶ 56), he testified during his deposition that he continued to receive his meals and was never denied access to the law library because of his alleged disability.  See Renelique Dep. at 134-35.  As to his claim of being denied access to the infirmary, Renelique's extensive medical records fail to demonstrate any denial of medical care.  See Dean Decl., Ex. B.  Thus, Renelique has failed to demonstrate that he was denied the benefit of any service, program, or activity based on his alleged disability.

_____

[7]  In fact, Renelique testified during his deposition that he regularly walked for exercise.  See Renelique Dep. (Docket No. 57, Dean Decl., Ex. C)  at 80.  Moreover, two other judges in this district have dismissed Renelique's substantially similar allegations of being a qualified individual with a disability.  See Renelique v. David, No. Civ. 03-1145 (LEK/RFT), at 47-48 (N.D.N.Y. Sept. 30, 2005); see also Renelique v. Goord, No. Civ. 03-525 (FJS/GJD), at 36-37 (N.D.N.Y. Sept. 19, 2005).

Therefore, it is recommended in the alternative that defendants' motion on this ground be granted.

## B. Eighth Amendment

Renelique contends that defendants were deliberately indifferent to his serious medical needs.

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  More than negligence is required "but less than conduct undertaken for the very purpose of causing harm."  Hathaway, 37 F.3d at 66.  The test is twofold.  First, the prisoner must show that there was a sufficiently serious medical need.  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

A serious medical need is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"  Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)).  An impairment that a reasonable doctor or patient would find important and worthy to treat, a medical condition that affects the daily activities of an individual, or the existence of chronic and substantial

9

pain are all factors that are relevant in the consideration of whether a medical condition was serious.  Chance, 143 F.3d at 702-03.

Deliberate indifference requires the prisoner to prove that the prison official knew of and disregarded the prisoner's serious medical needs.  Id. at 702.  Mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was adequate.  Id. at 703.  Allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness.  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  Here, it is unclear whether Renelique's conditions constituted a serious medical need.  However, even if Renelique's conditions were considered serious, his Eighth Amendment claim fails to demonstrate that defendants were deliberately indifferent.

Renelique contends that on July 22, 2003, Hoebeke "failed to schedule [him] to be examined by Dr. [Trachtman][8] after [he] sustained serious injuries . . . ."  Compl. at ¶ 4.  Renelique also contends that on July 28, 2003, Griffith denied his request to be examined by Dr. Trachtman.  Id. at ¶ 3.  As to the July 22 incident, Renelique's medical records from that day fail to demonstrate any evidence of serious injuries.  See Dean Decl., Ex. B at 9-10.  Although Renelique complained of some minor discomfort, he was able to sit up with minimal assistance and dress himself.  Id. at 10.  Further, he was given packs of ice and Ibuprofen for his pain.  Id.  Regarding Griffith, Renelique fails to allege what medical condition required treatment by Dr. Trachtman.  Moreover, Renelique received treatment from two different nurses on July 28.  Id. at 13-14.  Thus, Renelique has failed to raise a

---

[8] In his complaint, Renelique incorrectly refers to Dr. Trachtman as "Strachtman."

material issue of fact as to Hoebeke and Griffith's alleged deliberate indifference.

Renelique contends that on August 4 and 8, 2003, Dr. Trachtman "failed to order consultations[,] MRI, CT-Scan, EMG, orthopedic doctor . . .  audiologist evaluation . . . biopsy for [his] liver disease Hepatitis C, . . . and failed to treat [him] for his breathing complication, and [his] right side who's becoming paralyzed."  Compl. at ¶ 8.  As to Dr. Trachtman's alleged failure to order certain diagnostic tests, Renelique's claim must fail because an exercise of medical judgment cannot constitute deliberate indifference.  See Estelle, 429 U.S. at 107; see also Walton v. Breeyear, No. Civ. 05-194 (LEK/DEP), 2007 WL 446010, at *9 (N.D.N.Y. Feb. 8, 2007).  Regarding Dr. Trachtman's alleged failure to treat Renelique on August 4 and 8, his medical records from those days demonstrate that Renelique's claim is without merit.  On August 4, Dr. Trachtman examined Renelique and excused him from his work program.  See Dean Decl., Ex. B at 15.  On August 8, Dr. Trachtman again examined Renelique and reviewed with him his extensive medical records which indicated that various other specialists were unable to determine the cause of his complaints.  Id. at 19; see also Trachtman Decl. (Docket No. 57) at  ¶¶ 9-16.  Thus, Renelique has failed to raise a material issue of fact as to Dr. Trachtman's alleged deliberate indifference.

Renelique contends that on August 28, 2003, Pavlin refused to request an emergency sick call for him.  See Compl. at ¶ 15.  However, Renelique fails to allege any condition that required Pavlin to request an emergency sick call.  Moreover, any failure to request treatment for Renelique is nothing more than mere negligence and does not constitute deliberate indifference.  See Hathaway, 99 F.3d at 553.  Thus, Renelique has failed to raise a material issue of fact as to Pavlin's alleged deliberate indifference.

Renelique contends that on August 18 and 19, 2003, Gardner refused to schedule him to be examined by Dr. Miller.  <u>See</u> Compl. at ¶ 14.  However, Renelique was not transferred to Gardner's facility (Coxsackie) until August 19, making any interaction with Gardner on August 18 impossible.  <u>See</u> Dean Decl., Ex. A; <u>see also</u> Gardner Decl. (Docket No. 57) at ¶ 4.  As for August 19, Gardner received a health screening and immediately requested to see a doctor.  However, Gardner explained to Renelique that he has to follow sick call procedure in order to see a doctor, but Renelique refused.  <u>See</u> Gardner Decl. at ¶¶ 12-15.  Thus, Renelique has failed to raise a material issue of fact as to Gardner's alleged deliberate indifference.

Renelique contends that Byron refused to provide him with equal treatment afforded other inmates during sick call and refused to write all of his complaints in his medical chart.  <u>See</u> Compl. at ¶¶ 33-34.  However, Renelique testified during his deposition that Byron never refused to treat him.  <u>See</u> Renelique Dep. at 89.  Renelique's true complaint was that Byron did not have the patience to write down all of his complaints but fails to allege any injury from Byron's alleged inaction.  <u>See</u> <u>id.</u>  Thus, Renelique has failed to raise a material issue of fact as to Byron's alleged deliberate indifference.[9]

Therefore, it is recommended that defendants' motion for summary judgment on this ground be granted.

---

[9] Renelique also contends that Dr. Kovasznay failed to transfer him "to a facility where he can walk around without having no fear from been harm by any corrupted officers."  Compl. at ¶ 51.  However, Renelique fails to state a claim because inmates have no constitutional right to be housed in the correctional facility of their choice.  <u>See</u> <u>Davis v. Kelly</u>, 160 F.3d 917, 920 (2d Cir. 1998).

## C. First Amendment

### 1. Retaliation

Liberally construed, Renelique's complaint alleges that defendants threatened to place him in keeplock[10] for thirty days, denied him access to the law library, and failed to provide him with medical care in retaliation for his filing of grievances.   See Compl. at ¶¶ 19, 26, 28-29, 35, 40, 47.

In order to prevail on a retaliation claim, a plaintiff must first assert that his conduct was constitutionally protected and that this conduct was a "substantial factor" that caused the adverse action against plaintiff.   Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).   The burden then shifts to the defendant to show that by a preponderance of the evidence, the adverse action would have resulted even in the absence of the protected conduct.   Id.; see also Dawes v. Walker, 239 F.3d 489, 492 (2d. Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema, 534 U.S. 506 (2002). Retaliation claims are actionable because the conduct may tend to chill an individual's exercise of constitutional rights. Dawes, 239 F.3d at 491.   However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. Id.

Here, Renelique's filing of grievances were clearly assertions of a constitutional right protected by the First Amendment.   See Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996).   Renelique claims that the adverse action which resulted from this conduct was

_____

[10]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6 (1995).

constant threats by defendants and the denial of medical care and access to the law library. To constitute adverse action, a plaintiff must establish that the action would deter a similarly situated individual from exercising his or her constitutional rights. Dawes, 239 F.3d at 491. It is reasonably possible that other inmates would fail to exercise their constitutional right to file grievances for fear that they would be threatened by DOCS employees and be denied access to the law library and medical care.  Thus, Renelique's allegations regarding defendants' conduct at least presents questions of fact as to whether these actions could constitute adverse action.  However, Renelique fails to show a causal connection between his filing of grievances and defendants' alleged adverse action.  Thus, because Renelique offers only conclusory evidence to support his claim, he has failed to demonstrate a causal connection between the constitutionally protected conduct and the alleged adverse actions. See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983); see also Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).

Therefore, it is recommended that defendants' motion be granted as to Renelique's retaliation claims.

## 2. Access to Courts

Liberally construed, Renelique's complaint asserts a claim for denial of access to the courts.  See Compl. at ¶¶ 21, 26, 39, 48.

All persons have a constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 350 (1996); Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997).  To establish a violation of the right of access to the courts, a prisoner must demonstrate that his or her efforts to pursue a legal claim were impeded.  Lewis, 518 U.S. at 351; Bourdon v.

14

Loughren, 386 F.3d 88, 92-93 (2d Cir. 2004).  A plaintiff must demonstrate not only that a

defendant's conduct was deliberate and malicious but also that this conduct caused an

actual injury such as the "dismissal of an otherwise meritorious legal claim."  Cancel v.

Goord, No. Civ. 00-2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citing

Lewis, 518 U.S. at 351).

Here, Renelique contends that defendants spilled white-out on his legal documents,

denied him access to the law library, and destroyed a box of pre-trial submissions that were

prepared by his lawyers.  However, Renelique fails to allege or prove any actual injury from

these alleged incidents, much less that any of the defendants' conduct was "deliberate and

malicious."  Thus, Renelique has no viable claim on this ground.

Therefore, it is recommended that defendants' motion be granted as to Renelique's

access to courts claim.


### D.  Conspiracy

Liberally construed, Renelique alleges that defendants conspired to cover up the

circumstances surrounding his fall in the showers on July 22, 2003.  See Compl. at ¶ 5.

Renelique also alleges that defendants were "plotting to kill [him]."  Id. at ¶ 50.  To state a

claim for relief under 42 U.S.C. § 1985(3), a plaintiff must show

> (1) a conspiracy; (2) for the purpose of depriving, either directly or
> indirectly, any person or class of persons of equal protection of the
> laws, or of equal privileges and immunities under the laws; (3) an act in
> furtherance of the conspiracy; (4) whereby a person is either injured in
> his person or property or deprived of any right of a citizen of the United
> States.

Mian v. Donaldson, Lufkin, & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d.Cir.1993).

Here, Renelique only makes conclusory allegations of a conspiracy between the defendants and fails to offer any evidence of an agreement or that any two defendants joined together to deprive Renelique of any right.  Thus, his conspiracy claims must fail.  See Webb v. Goord, 340 F.3d 105, 111 (2d Cir. 2003) (holding that conclusory statements alone cannot support a conspiracy allegation).

Therefore, it is recommended that defendants' motion be granted as to Renelique's conspiracy claims.

### E. Due Process[11]

Renelique contends that during three separate disciplinary hearings on January 26, 2003, September 2, 2003, and February 27, 2004, McDermott denied his witnesses from testifying.  See Compl. at ¶ 18.  Renelique also alleges that Bump found him guilty at a separate disciplinary hearing of possessing unauthorized medication even though he provided evidence that demonstrated he was prescribed the medication by DOCS medical staff.  Id. at ¶ 17.  Finally, Renelique alleges that Gunderman violated his due process rights at a March 4, 2004 disciplinary hearing.  Id. at ¶ 46.

At a prison disciplinary proceeding, an inmate is entitled to (1) advance written notice of the charges, (2) an opportunity to call witnesses if it conforms with prison security, (3) a statement of evidence and reasons for the disposition, and (4) a fair and impartial hearing

---

[11] To the extent that Renelique contends that defendants' filing of false misbehavior reports rises to the level of a constitutional violation, these claims must fail because an "'inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'" Alnutt v. Cleary, 913 F. Supp. 160, 166 (W.D.N.Y. 1996) (quoting Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)).

officer.  <u>Kalwasinski v. Morse</u>, 201 F.3d 103, 108 (2d Cir. 1999) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-64 (1974)).  Additionally, the finding of guilt must be supported by some evidence in the record to comport with due process.  <u>See</u> <u>Massachusetts Corr. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985); <u>see also</u> <u>Luna v. Pico</u>, 356 F.3d 481, 487-89 (2d Cir. 2004).

As a threshold matter, defendants have provided Renelique's disciplinary history to demonstrate that no disciplinary hearings were held on his behalf on January 26 or September 2, 2003.  <u>See</u> Dean Decl., Ex. D.[12]  Only the February 27, 2004 hearing was conducted.  <u>See</u> <u>id.</u> at Ex. E.  During the February 27 hearing, the record clearly demonstrates that all of the witnesses requested by Renelique did testify, with the exception of two inmates who refused.  <u>See</u> <u>id.</u>  Thus, Renelique's due process claim as to the February 27, 2004 hearing is without merit.

The September 29, 2003 hearing was conducted by Bump regarding a misbehavior report charging Renelique with possessing excessive medication.  Renelique contends that Bump failed to take into account his documentation that DOCS medical staff had prescribed him the medication.  However, contrary to Renelique's assertion, he was not charged with unauthorized medication but with possessing excessive medication.  <u>See</u> Dean Decl., Ex. F.; <u>see also</u> Dean Decl., Ex. S at 15-16, 19-20.  Moreover, Bump's finding of guilt was supported by some evidence.  <u>See</u> Dean Decl., Ex. F.  Thus, Renelique's due process claim as to Bump is without merit.

Finally, Renelique contends that Gunderman prevented him from calling witnesses

---

[12] Renelique failed to provide any documentary evidence to support his claim that the January 26 and September 2, 2003 disciplinary hearings took place.  <u>See</u> Defs. Mem. of Law at 16 n.11.

during his March 4, 2004 disciplinary hearing.  <u>See</u> Renelique Dep. at 110-11; <u>see</u> <u>also</u>

Compl. at ¶ 46.  However, Renelique signed the hearing record sheet indicating that he did

not request any witnesses to testify on his behalf during the hearing.  <u>See</u> Dean Decl., Ex.

G.  Thus, Renelique's due process claim as to Gunderman is without merit.

Therefore, it is recommended that defendants' motion on this ground be granted.


### F. Verbal Harassment

In his complaint, Renelique repeatedly alleges that defendants "threatened and

harass[ed]" him.  <u>See</u> Compl. at ¶¶ 3, 10-11, 15, 19, 24, 26-29, 36, 39-43, 49-50.  However,

verbal harassment or threats in a prison setting do not rise to the level of a constitutional

violation.  <u>See</u> <u>Ebron v. Lantz</u>, No. Civ. 04-1375 (MRK), 2006 WL 18827, at *3-4 (D. Conn.

Jan. 4, 2006) (citing cases); <u>see</u> <u>also</u> <u>Tate v. Robinson</u>, No. Civ. 97-528 (RSP/RWS), 1998

WL 214429, at *2 (N.D.N.Y. Apr. 23, 1998) ("Plaintiff has no constitutional right . . . to be

free from verbal harassment and threats.").

Therefore, it is recommended that defendants' motion be granted as to Renelique's

claims as to verbal harassment and threats.


### G. Equal Protection

Liberally construed, Renelique's complaint alleges that defendants discriminated

against him because of his alleged disability in violation of his equal protection rights under

the Fourteenth Amendment.  <u>See</u> Comp. at ¶¶ 27, 34, 36.

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment

under the law.  Essential to that protection is the guarantee that similarly situated persons be treated equally.  <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination."  <u>Myers v. Barrett</u>, No. Civ. 95-1534(RSP/GJD), 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997).  In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  <u>See Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>Neilson v. D'Angelis</u>, 409 F.3d 100, 105 (2d Cir. 2005).

Here, Renelique makes only vague and conclusory allegations that he was denied the equal protection of the laws and thus has failed sufficiently to show an equal protection violation.  <u>See</u> <u>De Jesus v. Sears Roebuck & Co., Inc.</u>, 87 F.3d 65, 70 (2d Cir. 1996).  Equally significant here is that the complaint contains no allegation as to which inmates in a similar situation were treated differently than Renelique.  <u>Oliver v. Cuttler</u>, 968 F. Supp. 83, 88 (E.D.N.Y. 1997).  Thus, Renelique has failed to raise any triable question of fact as to this claim.

Therefore, it is recommended that defendants' motion be granted as to Renelique's equal protection claims.

### H. Failure to Protect

Liberally construed, Renelique's complaint alleges that defendants failed to protect

him from being assaulted by another inmate on January 26, 2004.  <u>See</u> Compl. at ¶¶ 20, 48.

Prison officials have a duty to protect inmates from violence by other inmates.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994).  When asserting a failure to protect claim, an inmate must establish that he was "incarcerated under conditions posing a substantial risk of serious harm" and that the defendants acted with deliberate indifference to the inmate's safety.  <u>Id.</u> at 834.  Deliberate indifference is established when the official knew of and disregarded an excessive risk to inmate health or safety.  <u>Id.</u> at 837.  However, "the issue is not whether [a plaintiff] identified his enemies by name to prison officials, but whether they were aware of a substantial risk of harm to [him]."  <u>Hayes v. New York City Dep't of Corr.</u>, 84 F.3d 614, 621 (2d Cir. 1991).  Here, however, Renelique has failed to demonstrate that he was "incarcerated under conditions posing a substantial risk of serious harm" or that defendants acted with deliberate indifference to his safety.  <u>Farmer</u>, 511 U.S. at 834.

Therefore, it is recommended that defendants' motion be granted as to Renelique's failure to protect claim.

## I. State Law Claims

Liberally construed, Renelique's complaint alleges that defendants were negligent in maintaining the showers and this caused him to fall and injure himself.  <u>See</u> Compl. at ¶¶ 6, 65.[13]  Defendants contend that Renelique's state law claims must be dismissed and that the

---

[13] Renelique also contends that defendant LeClair failed to provide him with the proper spelling of some of defendants' names.  <u>See</u> Compl. at ¶ 1.  However, Renelique has failed to allege or prove any injury and, thus, fails to state a constitutional claim.

Court should decline to exercise pendant jurisdiction over these claims pursuant to New York Correction Law § 24.[14]  See Defs. Mem. of Law at 21-22.  Pendant state law claims against correctional officers in their individual capacities are barred under § 24.  Baker v. Coughlin, 77 F.3d 12, 15-16 (2d Cir. 1996).  Thus, Renelique's state law claims for negligence are not cognizable in this court.

Therefore, it is recommended that defendants' motion on this ground be granted.


**J. Qualified Immunity**

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court

---

[14] Section 24 provides that:

1.  No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of the duties by such officer or employee.
2.  Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correct. Law § 24 (McKinney 2003).

21

proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Renelique's allegations as true, he has not shown that defendants violated his constitutional rights.

Therefore, it is recommended that defendants' motion for summary judgment on this alternative ground be granted.[15]


## V. Failure to Serve Defendants Flemming and Paulette

Defendants Flemming and Paulette have not been served with process or otherwise appeared in this action.  See Docket Nos. 18, 36.  These defendants were not parties' to defendants' motion here.  More than 120 days have now passed since the complaint was filed.  Accordingly, it is recommended that the complaint be dismissed as to these defendants without prejudice pursuant to Fed. R. Civ. P. 4(m) and N.D.N.Y.L.R. 4.1(b).

---

[15] Defendants Baldwin, Filion, Graham, Medina, Rivera, and Smith also contend that a civil rights action cannot be brought under the theory of respondent superior.  Defs. Mem. of Law at 18-21.  However, it is recommended herein that defendants' motion should be granted as to all of Renelique's claims on other grounds.  Thus, there is no need to address this argument.

## VI.  Conclusion[16]

For the reasons stated above, it is hereby:

**RECOMMENDED** that:

1.  Defendants' motion for summary judgment (Docket No. 57) be **GRANTED** as to all moving defendants and all claims;

2.  Defendants Flemming and Paulette be **DISMISSED** from the action without prejudice; and

3.  This action be terminated in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  March 15, 2007
        Albany, New York

_David R. Homer_
United States Magistrate Judge

---

[16] In his complaint under "Injuries Sustained," Renelique makes various claims, including allegations that he was assaulted by a corrections officer in 2000.  See Compl. at 9-10. However, during his deposition, Renelique testified that these claims were not at issue in the instant action.  See Renelique Dep. at 138.  Thus, these claims need not be addressed.